UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CAPELLI ENTERPRISES, INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>FANTASTIC SAMS SALONS CORPORATION, et al.,<br><br>  Defendants. | Case No. 5:16-cv-03401-EJD<br><br>**ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 20 |

In this action between franchisees and former franchisors, Plaintiffs Capelli Enterprises, Inc., Nameer Jalel and Aseel Issa (collectively, "Plaintiffs") move ex parte for a temporary restraining order ("TRO") enjoining Defendants Fantastic Sams Salons Corporation and Fantastic Sams Franchise Corporation (collectively, "Defendants") from proceeding with a demand for arbitration filed with the American Arbitration Association ("AAA"). Dkt. No. 20. Defendants have filed written opposition to the motion. Dkt. No. 28.[1]

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332.[2] Based on a careful review of the

---

[1] An ex parte TRO application must satisfy Federal Rule of Civil Procedure 65(b)(1), which demands either notice to the opposing party or a declaration from the movant's attorney certifying "in writing any efforts made to give notice and the reasons why it should not be required." The court was unable to locate a declaration regarding notice in Plaintiffs' application. In any event, Defendants were notified of the TRO request because Plaintiffs filed the motion on the electronic docket, and the court proceeded with briefing on the motion under those circumstances.

[2] Because the court is now satisfied that federal jurisdiction exists based on Plaintiffs' response filed on February 18, 2016 (Dkt. Nos. 23, 24), the order to show cause addressing that topic (Dkt. No. 22) is DISCHARGED.

That said, the court is nonetheless compelled to comment on one particular statement made by Plaintiffs in their jurisdictional filing. While it may simply be an inartful comment, Plaintiffs do

1
Case No.: 5:16-cv-03401-EJD
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

parties' pleadings in conjunction with the arguments made at the hearing on August 24, 2016, Plaintiffs' motion will be denied for the reasons explained below.

## I. BACKGROUND

In 2011, Plaintiffs entered into a 10-year Salon License Agreement (the "Agreement") with Defendants that required Plaintiffs to make certain payments to Defendants in exchange for the use of Defendants' commercial marks. According to Plaintiffs, the Agreement also required Defendants to "maintain and enhance the reputation and trade demand of the Fantastic Sams System" and to "preserve and increase the goodwill inherent to" Defendants' marks.

In addition, the Agreement contains an arbitration clause which states, in pertinent part:

> Except for matters relating to the collection of monies owed to [Defendants] by [Plaintiffs] and/or as otherwise explicitly exempted herein, any controversy or claim arising out of or relating to this Agreement or with regard to its interpretation, formation or breach of any other aspect of the relationship between [Plaintiffs] and [Defendants] . . . which is not settled through negotiation or mediation, shall be arbitrated in accordance with the Commercial Arbitration Rules of the [AAA]. Unless required otherwise by state law or by mutual agreement, the parties agree to arbitrate in Boston, Massachusetts. The parties agree further that the Arbitrators may tender an interim ruling, including injunctive relief, an all claims of any type by either party, including defenses, are included in the jurisdiction of the arbitration.

In or about April, 2016, Plaintiffs closed their Fantastic Sams salon business, and have not relocated or re-opened the business. They have not used Defendants' marks since closing the business. Plaintiffs allege, however, that Defendants have sought to collect monies purportedly owed for breach of the Franchise Agreement.

Plaintiffs initiated this case on June 17, 2016, and assert one claim for declaratory relief

---

suggest the court overlooked allegations contained in the Amended Complaint. Dkt. No. 23, at 1:24. Plaintiffs' hypothesis apparently stems from the implicit contention that, despite the undeniable absence of critical allegations as noted by the court, diversity jurisdiction was established by documents attached to the Complaint. It is not, however, the court's obligation to extract a basis for federal jurisdiction from unexplained clues in correspondence submitted with a party's pleading. It was Plaintiffs' duty to *affirmatively* and clearly plead jurisdiction and, as Plaintiffs themselves admit, none of the letters reveal the parties' domiciles or principal places of business in a manner that satisfies the legal definitions of those terms.

2
Case No.: 5:16-cv-03401-EJD
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

against Defendants.  Plaintiffs seek a declaration that no monies are owed to Defendant under the Agreement even though they closed their franchise before expiration of the contractual term.  In response to the Complaint, Defendants filed, on August 5, 2016, a motion to compel arbitration and to dismiss or stay this action based on arbitration provision cited above.  They also filed a demand for arbitration with the AAA on that same date.  This motion followed on August 16, 2016.

## II.    LEGAL STANDARD

The standard for issuing a TRO is the same as that for the issuance of preliminary injunction.  See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977).  Thus, a TRO, like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008).

"To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.'"  Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014)).

Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).  This articulation represents "one alternative on a continuum" under the "'sliding scale' approach to preliminary injunctions employed" by the Ninth Circuit.  Id. at 1131-32.

Whether to grant or deny a preliminary injunction is a matter within the court's discretion.  See Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

### III. DISCUSSION

#### A. Likelihood of Success or Serious Questions

To establish a likelihood of success on the merits, it not necessary for the moving party "to prove his [or her] case in full," or show that he or she is "more likely than not" to prevail. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981); Leiva-Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011). Instead, the moving party must demonstrate a "fair chance of success on the merits" or raise questions "serious enough to require litigation." Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978). "No chance of success at all, however, will not suffice." Id.

Plaintiffs articulate three arguments in an effort to satisfy the "likelihood of success" or "serious questions" elements. First, they argue the arbitration clause in the Agreement does not clearly delegate the "gateway" issue of arbitrability to the arbitrator. Second, they argue the arbitration clause mandates the court, and not the arbitrator, enforce the provisions of the Agreement. Third, Plaintiffs argue that their claim for declaratory relief falls within the Agreement's exclusionary provision.

Unsurprisingly, Defendants disagree with Plaintiffs' contentions. They argue the language of the arbitration clause "unmistakably" delegates issues of arbitrability to the arbitrator and incorporates the AAA rules in any event. They also argue, contrary to Plaintiffs' interpretation, that the arbitration clause does not explicitly reserve arbitrability issues to the court. In addition, Defendants argue that Plaintiffs' claim is one covered by the arbitration clause and not exempted by the exclusionary provision.

##### i. Delegation of Arbitrability

Looking first at whether the Agreement delegates arbitrability to the arbitrator, the court observes that this motion essentially raises issues similar to those raised by a motion to compel arbitration. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., a written arbitration agreement is "valid, irrevocable, and enforceable" in much the same way as any other contract or contractual provision. 9 U.S.C. § 2; Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).

4

Case No.: 5:16-cv-03401-EJD
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

Consequently, "[a] party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). When such a request is made, two questions must be answered: whether an arbitration agreement exists and whether it encompasses the dispute at issue. Id. at 1012; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130.

Plaintiffs do not dispute the existence of a valid agreement to arbitrate but focus on the scope of the arbitration clause. "It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1284 (9th Cir. 2009)(quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). Thus, while the court employs general state law principles of contract interpretation to determine the scope of an arbitration clause, it must normally do so "'while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996)). Indeed, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The issue of whether or not a claim is subject to arbitration "remain[s] within the province of judicial review" unless the parties delegate it to the arbitrator. Momot v. Mastro, 652 F.3d 982, 987 (2011). In fact, arbitrability "is left to the court unless the parties clearly and unmistakably provide otherwise." Id. at 988. In Momot, the Ninth Circuit held that language delegating to the

5

Case No.: 5:16-cv-03401-EJD
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

arbitrator "the authority to determine 'the validity or application of any of the provisions of'" the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'" and is evidence that "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." Id. at 988.  In contrast, other courts have found that language requiring that "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform arising out of or relating to" the parties' agreement does not constitute "clear and unmistakable" intent to refer issues of arbitrability to the arbitrator.  Meadows v. Dickey's Barbecue Rests., Inc., 144 F. Supp. 3d 1069, 1077 (N.D. Cal. 2015); Kimble v. Rhodes College, Inc., No. C-10-5786 EMC, 2011 U.S. Dist. LEXIS 59628, at *6, 2011 WL 2175249 (N.D. Cal. June 2, 2011).

Here, the arbitration clause provides that "any controversy or claim arising out of or relating to this Agreement or with regard to its interpretation, formation or breach of any other aspect of the relationship between [Plaintiffs] and [Defendants]" must be referred to arbitration. This language is distinguishable from that considered in Momot because it does not refer issues of "validity or application" of the Agreement to the arbitrator, but is similar to the "arising out of or relating to" language that other courts find insufficient to refer issues of arbitrability under the "more rigorous standard" that is applied.  Momot, 652 F.3d at 987.  Like those courts, this court finds that the language used in the Agreement's arbitration clause, while broad enough to encompass arbitrability, does not alone evidence a "clear and unmistakable" intent to refer such issues to the arbitrator.  And though Defendants argue otherwise, the referral of matters relating to the Agreement's interpretation does not transform the clause into a "clear and unmistakable" referral of arbitrability issues.  See Mikhak v. Univ. of Phoenix, No. C16-00901 CRB, 2016 U.S. Dist. LEXIS 80705, *12-13, 2016 WL 3401763 (N.D. Cal. June 21, 2016).

That determination does not end the matter, however, because the Ninth Circuit has also held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." Brennan v. Opus Bank, 796 F.3d 1125, 1130

(9th Cir. 2015). This is because one of the AAA rules "provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement.'" Id.

In this case, Plaintiffs concede that the arbitration clause incorporates the AAA rules by reference. But despite the concession, Plaintiffs argue the incorporation does not "clearly and unmistakably" evidence an intent to arbitrate arbitrability because they lack business sophistication and experience. Plaintiffs' position is misplaced.

Though the Ninth Circuit has touched on the issue of sophistication in cases such as Brennan and Oracle America, Inc., v. Myriad Group, A.G., 724 F.3d 1069 (9th Cir. 2013), it has not definitively decided whether and to what level a party must be sophisticated in order to exhibit an intent to arbitrate arbitrability through the incorporation of a provider's rules. Indeed, the appellate court did not need to reach the issue in either case because each involved sufficiently sophisticated parties. Brennan, 796 F.3d at 1131 (finding the parties to the agreement were sophisticated when one was a lawyer and the other was a bank); Oracle Am., Inc., 724 F.3d at 1069 (holding that, in a contract between software companies, "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of [rules of arbitration] delegates questions of arbitrability to the arbitrator").

But in light of the Ninth Circuit's more recent opinion in Brennan, in which the court acknowledged "the vast majority of the circuits" have not limited similar holdings to sophisticated parties or to commercial contracts (796 F.3d at 1130-31), this court echoes the conclusion reached by one of its colleagues in two decisions addressing this subject: that "[a] reference to the AAA rules can be sufficient to constitute clear and unmistakable intent to delegate" (Galen v. Redfin Corp., No. 14-cv-05229-TEH, 2015 U.S. Dist. LEXIS 161111, at *16-17, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) (Henderson, J.)), and that neither Brennan nor Oracle America "foreclose the possibility that unsophisticated parties can clearly and unmistakably delegate arbitrability to an

arbitrator through the incorporation of the AAA Rules." Zenelaj v. Handybook Inc., 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (Henderson, J.). This statement is particularly true when, as here, the contract at issue is commercial rather than consumer in nature, because the former circumstances more often involve parties with at least some degree of experience in the customs of business and contract. See Tompkins v. 23andMe, Inc., No.: 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068, at * 40-43, 2014 WL 2903752 (N.D. Cal. June 25, 2014), aff'd, No. 14-16405 (9th Cir. Aug. 23, 2016).

Turning to this case, the evidence shows that Plaintiffs were not unsophisticated in the details of business transactions at the time they entered into the Agreement. Both Jalel and Issa are educated professionals; Jalel is a software development engineer and Issa is a chemist. Jalel has undergraduate and masters degrees, as well as a Ph.D, and Issa has a degree in chemistry. They originally purchased their Fantastic Sams franchise in 2008, along with the outstanding shares of Capelli, from a previous franchisee. Thus, when Plaintiffs renegotiated their operating agreement with Defendants in 2011, they had already been operating the franchise for approximately three years. Under these facts, Plaintiffs cannot be considered akin to the everyday consumer or even the inexperienced business owner. Accordingly, to the extent it is required, the court is satisfied that Plaintiffs possessed the "modicum of sophistication" necessary to understand the import of the Agreement's terms, including the incorporation of the AAA rules. See Galen, 2015 U.S. Dist. LEXIS 161111, at *18.

Based on the information presented for this application, the court finds that the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator by incorporating the AAA rules.

### ii. Contradictory Provisions

Plaintiffs contend that, even if the Agreement contains a delegation of arbitratability, another portion of the arbitration clause "undermines" any such delegation. Specifically, Plaintiffs rely on the portion of the arbitration clause through which the parties consented to the "jurisdiction

8

Case No.: 5:16-cv-03401-EJD
ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

of any appropriate court to enforce the provisions of this section and/or to confirm any award rendered by the panel of arbitrators," and argue this statement "manifestly contradicts" any delegation of arbitrability.

In light of the "clear and unmistakable" standard that applies, courts have refused to enforce seemingly express delegations of arbitrability if they are rendered ambiguous in the face of a contradictory provision.  For example, in Baker v. Osborne Development Corporation, 159 Cal. App. 4th 884 (2008), the California Court of Appeal found an agreement did not "clearly and unmistakably" delegate arbitrability when it stated, on the one hand, "that issues of enforceability or voidability were to be decided by the arbitrator," but on the other, "indicated that the court might find a provision unenforceable."  159 Cal. App. 4th at 893-94.  Similarly in Cobarruviaz v. Maplebear, Inc., 143 F. Supp. 3d 930 (2015), the district court determined that an arbitration clause providing for the arbitration of "any controversy, dispute, or claim arising out of or related to . . . this Agreement" including its "breach, termination, interpretation, enforcement, validity, scope and applicability" was inconsistent with a severability provision stating that "any arbitrator or court" could declare or determine that a provision is invalid or unenforceable.  143 F. Supp. 3d at 940.  On that basis, the Cobarruviaz court found that the purported delegation in the arbitration clause was ineffective.  Id.

In contrast to the contractual terms addressed in Baker and Osborne, the provision of the Agreement permitting the court to enforce the arbitration clause is not inconsistent with a delegation of arbitrability issues to the arbitrator.  Notably, the Agreement does not permit the court to find a provision of the agreement invalid or unenforceable; it only allows the court the ability to enforce the provision by compelling a claim to arbitration, or to confirm any subsequent award.  This distinction makes a difference, because an arbitration provision can be enforced without also delving into abitrability and without invading the province of any issues delegated to the arbitrator.

On that basis, the court rejects Plaintiffs' argument based on contradictory provisions.

### B.    Conclusion

Given the above discussion, Plaintiffs have not satisfied their burden to demonstrate a "fair chance of success on the merits" and have not raised the types of "serious questions" necessary for a TRO.  See Benda, 584 F.2d at 315.  Indeed, it is unlikely Plaintiffs will successfully resist Defendants' motion to compel arbitration, and in particular, Defendants' argument that issues of arbitratability be decided by the arbitrator.

And although the court need not examine the matter further in light of that determination, it is worth pointing out that Plaintiffs have also failed to show irreparable harm.  See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [Winter elements]" (internal citations omitted).).  Plaintiffs' articulation of that element is based solely on harm resulting from the time and costs expended in arbitrating a non-arbitrable claim.  But since the court need not address the question of whether Plaintiffs' declaratory relief claim is arbitrable or not in light of its finding that such issue has been delegated to the arbitrator, the irreparable harm element is likewise left unsatisfied.  Consequently, Plaintiffs are not entitled to the extraordinary relief they seek.

## IV.    ORDER

Plaintiffs' ex parte motion for a TRO and order to show cause for preliminary injunction (Dkt. No. ) is DENIED.

**IT IS SO ORDERED.**

Dated: August 26, 2016



EDWARD J. DAVILA
United States District Judge