UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CAPELLI ENTERPRISES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FANTASTIC SAMS SALONS CORPORATION, et al.,<br><br>Defendants. | Case No. 5:16-cv-03401-EJD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION**<br><br>Re: Dkt. No. 16 |

Plaintiffs Capelli Enterprises, Inc., Nameer Jalel and Aseel Issa (collectively, "Plaintiffs") operated a franchised salon pursuant to an agreement with Defendants Fantastic Sams Salons Corporation and Fantastic Sams Franchise Corporation (collectively, "Defendants"), and initiated this declaratory judgment action after closing their business in 2016. Defendants responded by demanding arbitration with the American Arbitration Association ("AAA") and filed a Motion to Compel Arbitration and to Dismiss the Action or, in the Alternative, to Stay the Action Pending Arbitration. Dkt. No. 20. That motion, which Plaintiffs oppose, is now before the court.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. The court has carefully reviewed the parties' pleadings and finds this matter suitable for decision without oral argument. Civ. L.R. 7-1(b). The hearing scheduled for January 19, 2017, will therefore be vacated and the motion will be granted for the reasons explained below.

**I.   BACKGROUND**

In 2011, Plaintiffs entered into a 10-year Salon License Agreement (the "Agreement") with Defendants that required Plaintiffs to make certain payments to Defendants in exchange for the

1

Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE
ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

use of Defendants' commercial marks. According to Plaintiffs, the Agreement also required Defendants to "maintain and enhance the reputation and trade demand of the Fantastic Sams System" and to "preserve and increase the goodwill inherent to" Defendants' marks.

In addition, the Agreement contains an arbitration clause which states, in pertinent part:

> Except for matters relating to the collection of monies owed to [Defendants] by [Plaintiffs] and/or as otherwise explicitly exempted herein, any controversy or claim arising out of or relating to this Agreement or with regard to its interpretation, formation or breach of any other aspect of the relationship between [Plaintiffs] and [Defendants] . . . which is not settled through negotiation or mediation, shall be arbitrated in accordance with the Commercial Arbitration Rules of the [AAA]. Unless required otherwise by state law or by mutual agreement, the parties agree to arbitrate in Boston, Massachusetts. The parties agree further that the Arbitrators may tender an interim ruling, including injunctive relief, an all claims of any type by either party, including defenses, are included in the jurisdiction of the arbitration.

In or about April, 2016, Plaintiffs closed their Fantastic Sams salon business, and have not relocated or re-opened the business. They have not used Defendants' marks since closing the business. Plaintiffs allege, however, that Defendants sought to collect monies purportedly owed for breach of the Agreement.

Plaintiffs initiated this case on June 17, 2016, and assert one claim for declaratory relief against Defendants. They seek a declaration that no monies are owed to Defendants under the Agreement even though they closed their franchise before expiration of the contractual term. In response to the Complaint, Defendants filed the instant motion and a demand for arbitration with the AAA. Plaintiffs moved to enjoin the arbitration with a temporary restraining order ("TRO"), but this court denied that relief in a written order filed on August 26, 2016.

## II.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., a written arbitration agreement is "valid, irrevocable, and enforceable" in much the same way as any other contract or contractual provision. 9 U.S.C. § 2; see Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). "A party to a valid arbitration agreement may 'petition any United States district court for

2

Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

an order directing that such arbitration proceed in the manner provided for in such agreement.'" Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). When such a request is made, two questions must be answered: whether an arbitration agreement exists and whether it encompasses the dispute at issue. See id. at 1012; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130.

Generally, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000). Thus, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Similarly, arbitration should not be compelled if the court finds "grounds as exist at law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2; Rent-A-Center, 561 U.S. at 68. "However, federal courts are required to enforce agreements to arbitrate vigorously, according to their terms, and to resolve ambiguities in favor of arbitration." Ross Sinclaire & Assoc. v. Premier Sr. Living, LLC, No. 11-CV-5104 YGR, 2012 U.S. Dist. LEXIS 89229, at *15-16, 2012 WL 2501115 (N.D. Cal. June 27, 2012).

### III. DISCUSSION

As with the TRO request, the parties do not dispute the Agreement contains a valid arbitration clause. Instead, they disagree whether or not Plaintiffs' claim for declaratory relief is subject to the clause. But before the court may proceed to decide that issue, it must first sort out the parties' disagreement over who decides "gateway" issues such as arbitrability: the court or the arbitrator. On that topic, the court previously determined the parties clearly and unmistakably delegated those issues to the arbitrator by incorporating the AAA rules in the Agreement, and again so finds on this motion. Dkt. No. 31. But in addition, and unlike its prior ruling on

3

Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

Plaintiffs' TRO request, the court also finds that the particular language of the arbitration clause also evinces an intent to arbitrate arbitrability.

### A.  Delegation of Arbitrability

"It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1284 (9th Cir. 2009)(quoting AT&T Techs., Inc., 475 U.S. at 650). Thus, while the court employs general state law principles of contract interpretation to determine the scope of an arbitration clause, it must normally do so "'while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996)). Indeed, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The issue of whether or not a claim is subject to arbitration "remain[s] within the province of judicial review" unless the parties delegate it to the arbitrator. Momot v. Mastro, 652 F.3d 982, 987 (2011). In fact, arbitrability "is left to the court unless the parties clearly and unmistakably provide otherwise." Id. at 988. In Momot, the Ninth Circuit held that language delegating to the arbitrator "the authority to determine 'the validity or application of any of the provisions of" the arbitration clause, constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'" and is evidence that "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." Id. at 988. In contrast, other courts have found that language requiring that "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform arising out of or relating to" the parties' agreement does not constitute "clear and unmistakable" intent to refer issues of arbitrability to the arbitrator. Meadows v. Dickey's

4

Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

Barbecue Rests., Inc., 144 F. Supp. 3d 1069, 1077 (N.D. Cal. 2015); Kimble v. Rhodes College, Inc., No. C-10-5786 EMC, 2011 U.S. Dist. LEXIS 59628, at *6, 2011 WL 2175249 (N.D. Cal. June 2, 2011).

Here, the arbitration clause provides that "any controversy or claim arising out of or relating to this Agreement or with regard to its interpretation, formation or breach of any other aspect of the relationship between [Plaintiffs] and [Defendants]" must be referred to arbitration. The court previously held this language was distinguishable from the clause considered in Momot "because it does not refer issues of 'validity or application' of the Agreement to the arbitrator, but is similar to the 'arising out of or relating to' language that other courts find insufficient to refer issues of arbitrability under the 'more rigorous standard' that is applied." However, upon reinspection, the court now finds the Agreement's clause is expansive enough to constitute "clear and unmistakable evidence" of the parties' intent to arbitrate arbitrability. This is so because the clause plainly refers issues of interpretation to the arbitrator in addition to those "arising out of or relating to" the agreement. Since the present dispute over the scope of the clause will undoubtedly require an interpretation of the exclusionary provision - specifically the language excluding from arbitration "matters relating to the collection of monies owed to" Defendants - it is also one the parties expressly agreed to resolve in arbitration. See Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp., 820 F.2d 1531, 1534 (9th Cir. 1987) (observing the "the arbitrability of a dispute concerns contract interpretation").

But that is not the only evidence of the parties' intent to contractually delegate issues of arbitrability to a decisionmaker other than the court. "[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" because those rules "provide[] that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement.'" Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015).

In this case, Plaintiffs concede the Agreement mandates that disputes be "arbitrated in

5
Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

accordance with the Commercial Arbitration Rules of the [AAA]," and that this constitutes the type of incorporation referenced in Brennan. At that same time, however, they argue the incorporation does not "clearly and unmistakably" evidence intent to arbitrate arbitrability because they lack business sophistication and experience. This contention is unpersuasive for the same reasons the court identified in connection with the TRO request.

Though the Ninth Circuit has touched on the issue of sophistication in cases such as Brennan and Oracle America, Inc., v. Myriad Group A.G., 724 F.3d 1069 (9th Cir. 2013), it has not definitively decided whether and to what level a party must be sophisticated in order to exhibit an intent to arbitrate arbitrability through the incorporation of a provider's rules. The appellate court did not need to reach the issue in either case because each involved sufficiently sophisticated parties. Brennan, 796 F.3d at 1131 (finding the parties to the agreement were sophisticated when one was a lawyer and the other was a bank); Oracle Am., Inc., 724 F.3d at 1069 (holding that, in a contract between software companies, "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of [rules of arbitration] delegates questions of arbitrability to the arbitrator").

But in light of the Ninth Circuit's more recent opinion in Brennan, in which the court acknowledged "the vast majority of the circuits" have not limited similar holdings to sophisticated parties or to commercial contracts (796 F.3d at 1130-31), this court echoes the conclusion reached by one of its colleagues in two decisions addressing this subject: that "[a] reference to the AAA rules can be sufficient to constitute clear and unmistakable intent to delegate" (Galen v. Redfin Corp., No. 14-cv-05229-TEH, 2015 U.S. Dist. LEXIS 161111, at *16-17, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) (Henderson, J.)), and that neither Brennan nor Oracle America "foreclose the possibility that unsophisticated parties can clearly and unmistakably delegate arbitrability to an arbitrator through the incorporation of the AAA Rules." Zenelaj v. Handybook Inc., 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (Henderson, J.).

In any event, Plaintiffs were not unsophisticated in the details of business transactions at

the time they entered into the Agreement. Both Jalel and Issa are educated professionals; Jalel is a software development engineer and Issa is a chemist. Jalel has undergraduate and masters degrees, as well as a Ph.D, and Issa has a degree in chemistry. They originally purchased their Fantastic Sams franchise in 2008, along with the outstanding shares of Capelli, from a previous franchisee through a "complicated and paper/lawyer intense transaction." Decl. of Gerald C. Wells, Dkt. No. 40, at Ex. C. Thus, when Plaintiffs renegotiated their agreement with Defendants in 2011, they had already been operating the franchise for approximately three years, admitted they understood the terms of and obligations under the Agreement, and indicated they had discussed the benefits and risks of operating the franchise with an attorney, accountant or other professional advisor. Id. at Ex. D. Though Jalel and Issa now suggest a lack of familiarity with law or business in their declarations, this evidence establishes otherwise. The court is therefore satisfied that Plaintiffs possessed the "modicum of sophistication" necessary to understand the import of the Agreement's terms, including the incorporation of the AAA rules, even if they were unrepresented by counsel during the transaction. See Galen, 2015 U.S. Dist. LEXIS 161111, at *18.

In sum, the court finds that the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator. As such, the court need not reach the dispute over whether the arbitration clause encompasses Plaintiffs' declaratory relief claim as that issue will be for the arbitrator to decide.

### B.  Contradictory Provisions

Plaintiffs contend that, even if the Agreement contains a delegation of arbitratability, another portion of the arbitration clause "undermines" any such delegation. Specifically, Plaintiffs rely on the portion of the arbitration clause through which the parties consented to the "jurisdiction of any appropriate court to enforce the provisions of this section and/or to confirm any award rendered by the panel of arbitrators," and argue this statement "manifestly contradicts" any delegation of arbitrability. The court previously rejected this argument. Dkt. No. 31. It rejects it

7

Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

again here.

In light of the "clear and unmistakable" standard that applies, courts have refused to enforce seemingly express delegations of arbitrability if they are rendered ambiguous in the face of a contradictory provision. For example, in Baker v. Osborne Development Corporation, 159 Cal. App. 4th 884 (2008), the California Court of Appeal found an agreement did not "clearly and unmistakably" delegate arbitrability when it stated, on the one hand, "that issues of enforceability or voidability were to be decided by the arbitrator," but on the other, "indicated that the court might find a provision unenforceable." 159 Cal. App. 4th at 893-94. Similarly in Cobarruviaz v. Maplebear, Inc., 143 F. Supp. 3d 930 (2015), the district court determined that an arbitration clause providing for the arbitration of "any controversy, dispute, or claim arising out of or related to . . . this Agreement" including its "breach, termination, interpretation, enforcement, validity, scope and applicability" was inconsistent with a severability provision stating that "any arbitrator or court" could declare or determine that a provision is invalid or unenforceable. 143 F. Supp. 3d at 940. On that basis, the Cobarruviaz court found that the purported delegation in the arbitration clause was ineffective. Id.

In contrast to the contractual terms addressed in Baker and Cobarruviaz, the provision of the Agreement permitting the court to enforce the arbitration clause is not inconsistent with a delegation of arbitrability issues to the arbitrator. Notably, the Agreement does not permit the court to find a provision of the agreement invalid or unenforceable; it only allows the court the ability to enforce the provision by compelling a claim to arbitration, or to confirm any subsequent award. This distinction makes a difference, because an arbitration provision can be enforced without also delving into abitrability and without invading the province of any issues delegated to the arbitrator.

On that basis, the court finds the arbitrability delegation is not undermined by a contradictory provision.

8
Case No.: 5:16-cv-03401-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION OR, IN THE ALTERNATIVE, TO STAY THE ACTION

### C. Arbitral Forum Selection Clause

The Agreement requires that arbitration proceedings occur in Boston, Massachusetts. Relying on a California addendum to the Agreement that appears to call for arbitration in Orange County, Plaintiffs argue the venue provision is unenforceable because "there is no meeting of the minds as to the arbitral forum selection clause." But like issues of arbitrability, this one is also subject to the arbitration clause. Again, the clause requires the arbitration of "any controversy or claim arising out of or relating to" the Agreement, including disputes over interpretation and formation. Since Plaintiffs' argument is framed as to challenge to mutual assent, it certainly falls within issues concerning the formation of the Agreement. This challenge, therefore, is not one for the court to resolve.[1]

Plaintiffs also argue that arbitration cannot be compelled to occur somewhere outside this district. They are correct. 9 U.S.C. § 4 ("The hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed."); Continental Grain Co. v. Dant & Russell, 118 F.2d 967, 968-69 (9th Cir. 1941); Homestead Lead Co. of Missouri v. Doe Run Resources Corp., 282 F. Supp. 2d 1131, 1143-1144 (N.D. Cal. 2003) ("The Ninth Circuit's 1941 decision in Continental Grain Co. v. Dant & Russell remains the controlling authority" for determining the situs of a compelled arbitration). Though the court recognizes an order requiring arbitration in northern California contravenes the Agreement and may not be convenient to any party, such is the law in this Circuit. And though they complain now, Defendants could have avoided an order to arbitrate here by filing their petition to compel in Massachusetts rather than in this case.

### D. Stay or Dismiss

Since the court will grant the motion to compel arbitration, it must now decide whether this action should be stayed or dismissed. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has

---

[1] The court recognizes the AAA has already ruled on this issue. Dkt. No. 46.

been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Ninth Circuit, however, has held that courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988); Lewis v. UBS Fin. Servs. Inc., 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011).

Here, whether or not Plaintiffs' claims are actually arbitrable has yet to be determined. For this reason, and since there is at least the possibility the arbitrator may find the claims unsuitable for arbitration, the court will stay rather than dismiss this case.

## IV. ORDER

Based on the foregoing, Defendants' Motion to Compel Arbitration and to Dismiss the Action or, in the Alternative, to Stay the Action Pending Arbitration (Dkt. No. 16) is GRANTED. Pursuant to 9 U.S.C. § 4, the court orders that any hearing or other proceeding undertaken pursuant to the Agreement's arbitration clause shall occur within the Northern District of California.

This action is STAYED in its entirety pending the final resolution of the arbitration. The Clerk shall ADMINISTRATIVELY CLOSE this file.

**IT IS SO ORDERED.**

Dated: January 13, 2017



EDWARD J. DAVILA
United States District Judge